IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>**JORDAN ANDRADE-VALDEZ, a.k.a. "Jonathon," CARLOS ANDRADE-VALDEZ, RICARDO TORRES-AYALA, ADIR ALEJANDRO HERRERA POSADA, JUAN TREJO-MORA, EDGAR GAYTAN-CARRILLO, ERNESTO VALLES-SANCHEZ, a.k.a. "CHINO," WALEID AZIZEH, MAYRA NAVARRO-BORBOA, AIDA OLIVAS-ORNELAS, DAVID SAENZ-PALACIOS, CONCEPCION GABRIELA GARCIA-AQUINO, JOSE MALDONADO-GODINA, DAVID MENDOZA-ENRIQUEZ, a.k.a. "Cholo," and JACK SANCHEZ-PRIETO,**<br><br>Defendants. | ) | CRIMINAL NO. 23-1623-MLG |

**OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO DRUG & FIREARM EXPERT WITNESS TESTIMONY**

The United States hereby responds in opposition to (1) Defendant's Objection to United States' Notice of Intent to Offer Drug & Firearm Expert Witness Testimony (Doc. 252) (the "Gaytan Objection")[1]; and (2) Defendant Juan Trejo-Mora's Notice of Objection to the

[1] Defendant David Saenz-Palacios joined in the Gaytan Objection on December 16, 2024. *See* Doc. 254. The United States has no issue with Saenz-Palacios joining the Gaytan Objection, but both should be rejected for the reasons described below.

Government's Notice of Expert Witness Testimony (Doc. 253) (the "Trejo Objection") (collectively, the "Objections").

The Court should reject the Objections without a *Daubert* hearing because the proposed expert testimony has been repeatedly blessed by the Tenth Circuit.

## I. BACKGROUND

On October 17, 2024, the United States filed its Notice of Intent to Offer Drug & Firearm Expert Witness Testimony (Doc. 234) (the "Notice"). The Notice summarized the proposed testimony, provided a copy of Special Agent Piatt's CV, and cited six Tenth Circuit cases that foreclose the Objections' primary arguments.

## II. RELEVANT LAW

### A. Rule 702

District Courts have a gatekeeping function to assess proffered expert testimony. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). This process is undertaken pursuant to Federal Rule of Evidence 702. *See id*. While courts must not abandon their gatekeeping responsibility, Rule 702 should be applied liberally. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (noting that the standard under Rule 702 is "liberal"). Rigid requirements to the admission of experts are "at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony.'" *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 588 (1993) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)).

When evaluating a proffered expert, a district court's first task is to determine whether the expert is qualified. *Avitia-Guillen*, 680 F.3d at 1256. A witness may be qualified as an expert based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A court's next

task is to determine if the proffered testimony will be both relevant and reliable. *See Avitia-Guillen*, 680 F.3d at 1256. The Supreme Court has identified four factors regarding reliability: (1) whether the theory used can and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. *Daubert*, 509 U.S. at 579, 593–94.

These factors are, however, "not exclusive." *United States v. Baines*, 573 F.3d 979, 989 (10th Cir. 2009). Nor are they all required. "[E]xpert testimony does not have to meet all of the [*Daubert* factors] to be deemed sufficiently reliable." *Id*. (noting that the "inquiry is a 'flexible one,' as *Daubert* itself teaches"). Where "testimony is based on experience or training, we need not apply the *Daubert* factors to determine its reliability." *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999).

The critical question is whether "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. If an expert's testimony is within "the range where the experts might reasonably differ," the jury, not the trial court, should be the one to decide among the conflicting views. *Id*. at 153.

An expert's testimony must be relevant. *Avitia-Guillen*, 680 F.3d at 1256. Generally, expert testimony is relevant if it will be helpful to the trier of fact. *See Pueblo of Jemez v. United States*, 430 F. Supp. 3d 943, 1159 (D.N.M. 2019), *amended on reconsideration*, 483 F. Supp. 3d 1024 (D.N.M. 2020) (Browning, J.).

The Advisory Committee Notes to the 2000 Amendments to Rule 702 specifically address drug evidence:

> While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony

> based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of **code words** in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the **application of extensive experience to analyze the meaning of the conversations.** So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

Fed. R. Evid. 702 (emphasis added).

### B. Rule 703

Federal Rule of Evidence 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. The classic example of such testimony is a physician, who may base his diagnosis "on information from a variety of sources, such as hospital records, X-ray reports, statements by patients, and reports and opinions from nurses, technicians and other doctors." 6 Handbook of Fed. Evid. § 703:1 (9th ed. 2023). While a party could present most of these underlying sources separately, it is not required and would involve "a time consuming process of authentication." *Id.*

### C. Federal Rule of Criminal Procedure 16(a)(1)(G)

Federal Rule of Criminal Procedure 16(a)(1)(G) outlines the required disclosures that the government must make for any expert testimony that the government intends to use at trial. Subsection (iii) lists the four categories of disclosure that the government should make in its expert notices:

- A complete statement of all opinions that the government will elicit from the witness in its case-in-chief…;
- The bases and reasons for them;
- The witness's qualifications, including a list of all publications authored in the previous 10 years; and
- A list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

## III. <u>ARGUMENT</u>

The Tenth Circuit has consistently applied a liberal standard for the admission of law enforcement expert testimony. The only case to hold that the admission of law enforcement expert testimony was an abuse of discretion, *United States v. Medina-Copete*, "held that it was inappropriate to admit speculative, meandering testimony regarding whether veneration of certain 'narco' saints during a stop was evidence that the occupants of the vehicle knew that they were transporting drugs." *United States v. Vann*, 776 F.3d 746, 759 (10th Cir. 2015). The Tenth Circuit has since commented that "*Medina–Copete* is the exception not the rule, and, as noted, we have consistently allowed police officers to testify as to conclusions deriving from their expertise and experience." *Id.* Even Judge Browning, who authored the opinion least favorable to law enforcement expert testimony, admitted similar testimony to that proposed here and noted that the Tenth Circuit has left "little doubt as to the liberality of the standard to be applied." *United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1243 (D.N.M. 2015).

The Objections throw every possible argument to the contrary at the wall, without developing any of them or distinguishing the binding cases that permit the challenged testimony.[2]

[2] In particular, the Gaytan Objection repeats arguments raised in a prior case that were rejected by the Tenth Circuit. *See United States v. Crayton*, No. 22-2118, 2024 WL 139566, at *3 (10th Cir. Jan. 12, 2024) (unreported).

### A. The Notice is Sufficient Under Rule 16.

#### 1. The Notice provides a complete statement.

The Notice provides a specific summary of the testimony that SA Piatt will provide. He will describe "the methods and practices commonly used in drug transactions, drug terminology, tools of the drug trade, distinctions between personal use amounts and distribution amounts,[3] and the value of the drug exhibits in this case." Doc. 234 at 2. As to the connection between firearms and drug trafficking, he will testify that "individuals who traffic in drugs frequently arm themselves to protect their merchandise and money from other drug traffickers or drug users." Specifically, this testimony may include:

> the threats that may motivate drug traffickers to possess firearms, including, for example, disputes over purity, quantity, and pricing that can arise between sources of supply and traffickers, as well as the danger posed by would-be thieves and drug "rip crews";
>
> the relative advantages and disadvantages of specific types of firearms for drug traffickers, such as firearms that were not purchased by the user or lack serial numbers; and
>
> that, in a "stash" room, where large amounts of narcotics and items for manufacturing narcotics are located, drug dealers usually have firearms for protection from any potential robbery.

*Id.* at 2-3. As to the specific firearms in this case, SA Piatt will testify: (1) that he conducted physical examinations and firearm function checks on the numerous firearms seized in this case; regarding the definitions of a firearm under federal law; and (3) that he test-fired the firearms and that they functioned as designed and that they are, in fact, firearms as defined pursuant to 18 U.S.C. § 921(a)(3). *Id.* at 3.

The Gaytan Objection omits portions of the Notice. *See* Doc. 252 at 2 (omitting all specific

---

[3] *See, e.g.*, *United States v. Draine*, 26 F.4th 1178, 1191 (10th Cir. 2022) (officer testified the "large amount" of heroin found in a duffel bag would "definitely be a distribution.").

examples described above). It then complains that the Notice is "very vague" and similar to another notice filed in a drug trafficking case. *Id.* There is one obvious problem with the Gaytan Objection's argument: the testimony SA Piatt will provide is relatively simple,[4] and varies little from case to case.[5] SA Piatt will testify in order to help jurors understand a world with which they are not familiar. *See United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) ("We have long recognized that police officers can testify as experts based on their experience because the average juror is often innocent of the ways of the criminal underworld."). The Notice need not provide a transcript of his testimony to give Defendants adequate notice of its subject matter. *See United States v. Wilson*, No. 6:23-CR-0062-KWR, 2024 WL 3606300, at *7 (E.D. Okla. July 31, 2024) ("Expert witness disclosures require 'a complete statement of all opinions the expert will provide but does not require a verbatim recitation of the testimony the expert will give at trial.'") (quoting Fed. R. Crim. P. 16 advisory committee's note to 2022 amendment).

**2. The Notice provides the bases and reasons for SA Piatt's testimony, but the United States will supplement them in an abundance of caution.**

The Notice incorporates SA Piatt's CV, which explains the bases and reasons for his testimony. Cases "involving technical or scientific evidence may require greater disclosure, including written or oral reports," while cases involving experience-based expert testimony necessarily involve less disclosure. *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995). For example, an expert automobile repair mechanic may not be able to list every car he has worked on in the last five years, but may nonetheless have specialized knowledge that would assist the

[4] For example, a forensic chemist's testimony includes multiple explanations of complex scientific testing, and may be far longer.

[5] For example, the Gaytan Objection points out that "personal drug use is not at issue," but a description of personal use amounts or distribution amounts will help jurors to understand whether Mr. Gaytan possessed the heroin located throughout his residence for his personal use.

jury. The United States will supplement the Notice in an abundance of caution, as well as to provide Gaytan's co-defendants with additional information on his testimony.

The Gaytan Objection invents a hypothetical exchange between counsel and SA Piatt, in which SA Piatt relies on bald assertions like "in my experience" or based on "cases I've been involved in" to justify his opinions. Doc. 252 at 3. This argument attempts to stretch the meaning of "bases and reasons" to include specific reference to all of the cases SA Piatt has worked, but that is not a reasonable interpretation of Rule 16. The Notice is sufficient to establish the bases of SA Piatt's opinions. As supplemented, it is more than sufficient.

**B. The Gaytan Objection's Citation to a Prior Case is Irrelevant.**

The Gaytan Objection devotes a heading to attacking expert "testimony"[6] from a different agent, from a different agency, on a different topic. Doc. 252 at 5-6. The United States has no intention of debating the difference between an "assault rifle" (a colloquial term) and an Armalite Rifle, or delving into the history of an AR-style rifle. The fact that an expert somewhere made an error does not invalidate the testimony of all law enforcement expert witnesses everywhere.[7]

**C. SA Piatt is Qualified.**

From February of 2019 to the present, SA Piatt has been a special agent for the Drug Enforcement Administration (DEA). He graduated from the DEA Academy, Basic Agent Training, in 2019. As part of Basic Agent Training, he received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III

---

[6] The transcript provided is for argument on an oral motion for a mistrial, rather than actual cross-examination. The jury was not in the courtroom. *See* Doc. 252-1 at 1-4.

[7] In a sense, the Gaytan Objection undermines its own argument. Had the expert made the same error before the jury, cross-examination could have undermined his expertise in the eyes of the jury.

wiretaps, drug identification, search warrant executions, and vehicle stops.

SA Piatt has participated in five to ten narcotics investigations per year over the last five years. He is now among the most accomplished agents in the Albuquerque District Office. He personally directed a large and complex wiretap investigation involving the distribution of large quantities of cocaine, heroin, fentanyl, and methamphetamine. This investigated resulted in the then-largest DEA fentanyl seizure in New Mexico, the seizure of kilograms of methamphetamine, heroin, and cocaine, the guilty pleas of five defendants, and the indictment of a Mexico-based source of supply affiliated with the Sinaloa Cartel. This investigation won SA Piatt the High Intensity Drug Trafficking Area Investigator of the Year award in 2023. SA Piatt has participated in many more such investigations, some of which are covert and ongoing. He has interviewed dozens of large-scale drug traffickers regarding their methods and tools of the trade, been present for the interviews of hundreds of traffickers, and directly observed the operations of drug trafficking organizations through surveillance and intercepted telephone calls. He has more experience with larger drug trafficking organizations like the one charged here than some agents who have been at DEA for twice as long.

SA Piatt is also deeply familiar with firearms and their use as tools of the drug trafficking trade. The majority of his drug investigations have led to the seizure of multiple firearms, and he has interviewed dozens of subjects about the reasons that they possess firearms despite the substantial legal penalties that apply. DEA Agents in the Albuquerque District Office participate in dozens of search warrant executions each year, which involve the potential for violence and require agents to maintain a high degree of familiarity with firearms. SA Piatt is also a certified DEA Firearms Instructor, which means that he instructs other Special Agents on the proper use of their firearms.

The requirements for expert testimony are liberal. SA Piatt has more than sufficient specialized training and experience to serve as an expert in this case.

**D. Rule 702 Permits the Proposed Testimony.**

The Trejo Objection raises a familiar argument: that the proposed testimony "is not helpful to the jury" and "usurps the jury's role" by providing testimony on issues an ordinary juror could easily understand. Doc. 253 at 9, 10.

There is a long line of authority rejecting this very point. *See, e.g.*, *United States v. Hartman*, 194 F. App'x 537, 543 (10th Cir. 2006) ("In the case at hand, it is reasonable to assume that the habits of drug dealers—including the amounts and combinations of drugs, methods of distribution, and the use of firearms—are not within the expertise of a lay person[.]"); *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) ("[W]e do not believe that Daubert and its progeny (including the 2000 amendment to Rule 702) provide any ground for us to depart from our pre-Daubert precedents recognizing that police officers can acquire specialized knowledge of criminal practices and thus the expertise to *opine on such matters as the use of firearms in the drug trade*.") (emphasis added); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992) ("[W]e conclude that the agent's testimony was useful to describe the value of clandestine laboratories and the presence of firearms at those laboratories. Without the agent's testimony, the jury would have known neither the investment that a methamphetamine lab requires nor the desire of the operator of such a lab to protect that investment through the use of firearms."); *Kamahele*, 748 F.3d at 998 ("We have long recognized that police officers can testify as experts based on their experience because the average juror is often innocent of the ways of the criminal underworld.").

**E. SA Piatt Will Not Rely on Unreliable Hearsay.**

The Objections argue that SA Piatt's testimony will "impermissibly rely on hearsay" in

violation of the Sixth Amendment. Doc. 252 at 4; Doc. 253 at 2.

Courts have repeatedly permitted drug experts to testify based on their "extensive experience," which necessarily includes interactions with drug traffickers like Trejo-Mora and Gaytan. *See, e.g.*, *United States v. Rollins*, 862 F.2d 1282, 1293 (7th Cir. 1988) ("The government established that *information obtained from informants* about the meaning of specific code words is the type of evidence that is ordinarily relied upon by experts in the narcotics field.") (emphasis added).[8] So long as the experts do not parrot back specific hearsay statements provided by confidential sources, this testimony is permissible. In *United States v. Quintana*, the government's drug expert responded to questions from a prosecutor:

> Q: Now there is also a reference to it's been stomped on, those are the words that are used. *Have you heard that term used before*?
>
> A: Yeah, that's another term *which is used to describe* the cutting that we talked about earlier. When a lot of cutting agent is added to the cocaine decreasing its percentage of purity then it's referred to as being cut and sometimes stomped on.

70 F.3d 1167, 1171 (10th Cir. 1995) (emphasis added). The Tenth Circuit explained that this testimony was not a close call: it "clearly fell within the parameters of Rule 702 and precedent in this Circuit." *Id.*

SA Piatt will not provide the sort of testimony disapproved in Defendant's cited cases. He will not draw conclusions based on "his knowledge of the case file and upon his conversations with co-conspirators[.]" *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003) (disapproving case agent's interpretation of non-coded wire conversations). He will not repeat the contents of confidential informants recruited within the same investigation. *See United States v. Mejia*, 545

[8] Drug experts may also testify based on their *own* experience participating in undercover transactions. For example, they may testify that they have used a specific code word to successfully purchase cocaine on several occasions.

F.3d 179, 199 (2d Cir. 2008). He will instead properly draw conclusions based on "his extensive general experience with the drug industry." *Id.*; *see also United States v. Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014) ("Unlike the gang expert in *Mejia,* nothing in Franks' testimony suggests that he was directly repeating what someone else told him about the Minnie Street Lopers during this or any other investigation."). SA Piatt was barely involved in the investigation that led to Defendant's arrest, so it is difficult to see how he could do otherwise.

**F. SA Piatt Will Not Vouch for Fact Witnesses.**

The Objections both contend that SA Piatt will merely vouch for fact witnesses. This argument has no merit. "The bar on bolstering a witness's testimony extends only to expert testimony concerning the witness' credibility and not to expert testimony that is consistent with another witness's testimony." *Rodriguez*, 125 F. Supp. 3d at 1236. Cases prohibiting bolstering involve expert testimony that a defendant's confession was credible, or that a cooperating witness testified truthfully. *See, e.g.*, *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (approving testimony that victim's symptoms were consistent with those of a sexual assault victim, but prohibiting testimony that victims testified credibly). SA Piatt will not vouch for any cooperating witness's testimony.

**G. There is No Justification for a Daubert Hearing.**

Nothing about SA Piatt's proposed testimony is remotely controversial or novel. The Court may conduct a pretrial hearing on the preliminary question of whether certain expert testimony is admissible pursuant to Fed. R. Evid 702. *See* Fed. R. Evid. 104; *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999). However, such a hearing is only necessary when "the interests of justice" require it. Fed. R. Evid. 104(c)(3).

The Court may decline to hold a hearing when the subject matter of the expert witness's

testimony is not new or novel but rather already familiar to the court from prior cases. S*ee Nichols*, 169 F.3d at 1263. A pretrial hearing should also not occur when the challenge to the expert witness's testimony is limited to credibility and weight. *See Id*. The trial court may also defer its decision on the admissibility of expert testimony until the testimony is offered at trial. *Id.* at 1262. A decision by the trial court to proceed without a preliminary hearing is reviewed on appeal for abuse of discretion. *Id.* at 1263.

## IV. CONCLUSION

For the reasons described above, the United States respectfully requests that the Court overrule the Objections and permit the proposed expert testimony to be admitted in its case-in-chief at trial without holding a *Daubert* hearing.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

***Electronically filed December 18, 2024***
DAVID HIRSCH
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, New Mexico 87102
(505) 346-6862

I HEREBY CERTIFY that on 12/18/24
I filed the foregoing pleading electronically
through the CM/ECF system, which caused
counsel of record to be served
by electronic means.

***Electronically filed***
DAVID HIRSCH
Assistant United States Attorney